**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**

| | | |
|---|---|---|
| **MICHAEL CLEGG** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **AMCOR RIGID PACKAGING** | ) | |
| **USA, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S COMPLAINT

### JURY TRIAL DEMANDED
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes the Plaintiff, Michael Clegg, through the undersigned counsel, and for his Complaint against the Defendant, Amcor Rigid Packaging USA, LLC, states as follows:

### PARTIES

1. Plaintiff, Michael Clegg (hereinafter referred to as "Plaintiff" or "Mr. Clegg"), is domiciled in Lake Saint Louis, MO 63367.  Until his illegal termination on or about November 16, 2020, Mr. Clegg was employed by the Defendant as the Supply Chain Manager for its facility in Nicholasville, Jessamine County, Kentucky.

2. Defendant, Amcor Rigid Packaging USA, LLC (hereinafter referred to as "Defendant" or "Amcor"), is a for-profit foreign limited liability company, organized under the laws of Delaware and with its principal office located at 10521 Highway M-52, Manchester, Michigan 48158. Amcor is registered to do business in the Commonwealth of Kentucky and did so at all times relevant to this Complaint, including, but not limited to, during its employment of Mr. Clegg. Amcor may be served via its Registered Agent at C T Corporation System, 306 West

Main Street, Suite 512, Frankfort, Kentucky 40601.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction under 28 U.S.C. § 1331 to adjudicate Plaintiff's claims arising under the Constitution and the laws of the United States.

4. Venue is proper in this Court pursuant to, *inter alia*, 28 U.S. Code § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## UNDERLYING FACTS

5. Plaintiff was originally hired by Amcor on or about July 1, 2018 in its Hazelwood, Missouri plant. Plaintiff was later promoted and, in July of 2020, transferred to Defendant's facility in Nicholasville, Kentucky as its Supply Chain Manager.

6. Among Plaintiff's job duties as the Supply Chain Manager at the facility in Nicholasville, was to accurately assess and report the facility's inventory reconciliation.  Such duty included adjusting or "writing-down" discrepancies found in cycle counts. Such counted materials include plastic bottles, cardboard supplies and wooding shipping pallets.

7. As a publicly traded company, the Defendant is required to keep accurate record of inventory figures and balance sheets, so as to not misrepresent its financial status and/or assets in documentation made available to the public and for the consideration of investors.

8. During his employment at Amcor's Kentucky facility, the Plaintiff repeatedly reported and opposed the lack of control over OSM (the reporting process for tracking obsolescence in Amcor's inventory), suspicious and incorrect cycle counting practices, and the pressure exerted by plant management on personnel involved in the cycle count process to report numbers different from those originally found. The issues reported by Plaintiff were not corrected,

resulting in the overstatement of assets as documented on its balance sheets.

9.  Plaintiff discovered that the Plant Manager and Controller at Amcor's Nicholasville plant were improperly influencing the cycle count process to manipulate (i.e., overstate, inflate) actual inventory stock by closing the gap between corporate's automated totals and actual inventory. This caused Amcor's balance sheet to show a falsely inflated value and ignored discrepancies and liabilities that should have been written off.

10. Plaintiff discovered similar improprieties in other inventory categories as well, equal to several hundred thousands of dollars, which he also opposed and reported to Amcor management.

11. Plaintiff's reports of these serious improprieties to Amcor's management were dismissed without being remedied.

12. Leading up to his termination, Plaintiff discovered a large quantity of OSM plastic bottles being stored in an improper location. The Defendant did this to avoid setting aside ("writing off") the required 90% of the value of the bottles on the company's financial statements, which was required by, *inter alia*, Generally Accepted Accounting Principles ("GAAP") and Amcor Corporate Policy. During a conference call with Defendant's local plant management (including the Nicholasville plant manager), and Defendant's corporate management, the issue regarding the large quantity of OSM plastic bottles was raised. Amcor management did not dispute the validity of this issue and initially claimed they were taking efforts to resolve the issues reported by Plaintiff. However, Amcor's Nicholasville plant Director then attempted to avoid further discussion of the topic by demanding that the matter be discussed "offline." In other words, he did not want to discuss the issue that Plaintiff had originally raised in a forum where a record could be produced, such as a conference call line or in an email. At the time of Plaintiff's termination, the OSM bottle issue remained unaddressed and unchanged.

3

13. By failing to write off the unsellable goods and stagnant inventory Mr. Clegg had reported as a liability, the Defendant's financial records showed falsely inflated assets and inaccurate balance sheets in a substantial amount for the Nicholasville plant.

14. In or about October of 2020, a few weeks after Plaintiff reported and opposed the OSM bottle discrepancy, he became aware of an issue with the Nicholasville plant's cycle count of cardboard. Discrepancies were found in the count by the cycle counter, who was a direct report to and supervised by the Plaintiff. Defendant's Nicholasville plant manager and controller repeatedly refused to accept this cycle count, which showed, among other things, that a six-figure write down was necessary. This write down would have resulted in the recognition of an over one hundred thousand dollar ($100,000.00) asset loss.

15. After several cycle counts, the Plaintiff brought the cycle counter with him to the plant manager's office. The Plaintiff opposed Defendant's refusal to accept the cycle counter's accurate count. Following Plaintiff's legally protected opposition, the plant manager reluctantly agreed to accept the cycle count and claimed he would properly document the loss with a six-figure write-off. The Plaintiff, however, was never given any verbal or visual confirmation that the plant manager had followed through with his reluctant agreement to actually recognize the substantial loss.

16. Approximately two (2) weeks thereafter, on or about October 15, 2020, the Defendant placed the Plaintiff on a retaliatory four (4) week Performance Improvement Plan ("PIP"), claiming that he was unable to get along with other employees.

17. In October of 2020, Plaintiff conveyed, verbally and by email, to Barb Kerr, Senior HR Manager, regarding the Nicholasville Plant Manager's behavior and intentions, and his belief that the PIP was actually going to be used to falsely justify termination of his employment.

4

Plaintiff was assured that it would not result in his termination. The Plaintiff was further told that the plant manager's dishonesty and retaliation against Plaintiff for reporting and opposing Defendant's financial reporting improprieties would be investigated.

18. During the first two (2) weeks of his PIP, the Plaintiff received positive feedback and verbal assurance that he was meeting all requirements to successfully complete his PIP.

19. After the first two weeks of his PIP, Plaintiff was exposed to COVID-19. Per Amcor's policy, and at the company's direction, he was required to not come in to work and to quarantine at home for two (2) weeks, for which he complied.

20. While in quarantine, Plaintiff was on job-protected leave pursuant to the Emergency Family and Medical Leave Expansion Act ("EFMLEA") in effect at the time.

21. Following his two weeks in quarantine, Plaintiff returned to Amcor's Nicholasville plant on November 16, 2020. That morning, Amcor Human Resources informed Plaintiff that his PIP would need to be extended by two (2) weeks to cover his time spent in quarantine, as this had caused the Plaintiff to only complete two (2) weeks of actual time on the PIP.

22. Later that same day, however, Amcor changed course. The Plaintiff was called into a meeting with the Plant Manager, and his employment was summarily terminated. Despite Amcor's previous assurances that Plaintiff had been meeting all expectations of his PIP and that his job was not in jeopardy, and the fact that he had just returned from EFMLEA leave, Amcor told Plaintiff that his termination was based on his "failure to improve."

23. In actuality, Plaintiff's employment had been terminated because he engaged in legally protected activity.

24. The practices that Plaintiff had opposed resulted in the artificial inflation of Amcor's balance sheets. It made the company's financials look better than they were because Amcor refused to

recognize certain liabilities, including the OSM plastic bottles. This is significant for any company, but it is particularly problematic for a publicly-traded company, such as Amcor. Amcor's falsely inflated financials were held out to the public and its shareholders and represented an inaccurate picture of the company's financials.

25. Shortly after Plaintiff engaged in legally protected activity, Amcor manufactured false allegations against him. This included the false allegation that Plaintiff was a "bully." Upon information and belief, this is a practice used by Amcor to terminate and silence employees, such as the Plaintiff, who oppose fraudulent activity and illegal practices at the company.

26. Upon information and belief, within the past six (6) years, the Defendant turned over seven (7) different individuals holding the same position as Plaintiff.

27. The Plaintiff's immediate predecessor had virtually the same experience as the Plaintiff. This predecessor voiced opposition to Amcor's improper inventory practices, including specifically reporting what he believed to be violations of Sarbanes Oxley ("SOX.") This individual was subsequently terminated under the pretext that he could not get along with other employees.

28. Plaintiff's immediate successor also voiced similar concerns about Amcor's improper inventory practices, including the same improper practices reported by Plaintiff relating to the OSM plastic bottles. This individual, who was aware of Amcor's treatment of Plaintiff and others before him, was about to be placed on a similar PIP. Plaintiff's successor saw the retaliatory writing on the wall and, knowing the fate of his predecessors, resigned before the company could terminate him.

## COUNT I

### VIOLATIONS OF TITLE VIII OF THE SARBANES-OXLEY ACT OF 2002, 18 U.S.C. §1514A

29. Plaintiff incorporates each of the paragraphs above as if each has been fully restated herein.

6

30. Section 806(a) of the Sarbanes-Oxley Act, codified at 18 U.S.C. § 1514A, forbids companies from discharging, demoting, suspending, threatening, harassing, or otherwise discriminating against whistleblowing employees.

31. 18 U.S.C. § 1514A is a whistleblower protection statute that is enforced by the Occupational Safety and Health Administration (herein "OSHA")

32. Defendant is a "publicly traded company" as defined by the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A.

33. As a prerequisite to bringing a claim under 18 U.S.C. § 1514A in federal district court, Plaintiff must file a complaint with OSHA. The complaint is to detail the adverse employment actions of which the Plaintiff was subjected to.  Plaintiff timely filed a complaint with OSHA in March of 2021.

34. OSHA allows a complaint to be submitted in the following ways: online, faxed, mailed, telephone conversation with local OSHA regional office, or a detailed letter sent to local OSHA regional office.

35. If OSHA fails to act within one hundred eighty (180) days of an employee's filing, then an action may be brought in a federal district court.

36. Plaintiff filed a complaint with the OSHA regional office on March 4, 2021, detailing the adverse employment actions of the Defendant.

37. After one hundred eighty (180) days of inaction on OSHA's part, Plaintiff now seeks remedy through commencing this action at law.

38. To recover under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, a plaintiff must show that he engaged in protected activity under the statute, that his employer knew of the protected activity, that he suffered an adverse employment action, and that plaintiff's protected activity

was a contributing factor in the adverse action.

39. Under 18 U.S.C. § 1514A, a plaintiff does not have to prove that his employer acted with intent to defraud shareholders or that any fraud actually occurred.

40. Moreover, a plaintiff need only show that he *reasonably believed* that the conduct he was reporting violated the law.

41. Plaintiff engaged in legally protected activity under Sarbanes-Oxley, including, but not limited to, informing various management-level employees of the Defendant of the Defendant's improper and/or illegal business practices and procedures including Defendant's manipulation of OSM, suspicious and incorrect cycle counting practices, systematic and coordinated delay in adjusting known write offs and the pressure exerted by management on cycle counters to report numbers different from those originally found. Plaintiff reported and opposed Defendant's improper practices that resulted in falsely-inflated financial figures being reported Defendant's shareholders and the public.

42. Plaintiff reasonably believed Defendant's conduct constituted illegal activity and a violation of 18 U.S.C. §§ 1341, 1348, and 1349.

43. Plaintiff's legally protected activity was the sole and/or a major contributing factor in the Defendant's decision to take adverse action against the Plaintiff, including, but not limited to, putting Plaintiff on a PIP and terminating his employment.

44. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages.

45. Pursuant to 18 U.S.C. § 1514A and all applicable authority, Plaintiff is entitled to equitable relief in the form of reinstatement (or, if reinstatement is rendered impracticable, front pay), back pay with interest, restoration of benefits including but not limited to seniority, sick leave,

etc., special damages for emotional distress and loss of professional reputation, attorneys' fees and costs, and affirmative relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michael Clegg hereby demands judgment against the Defendant, Amcor Rigid Packaging USA, LLC, for all relief allowed by law, including:

(a) a trial by jury;

(b) compensatory damages, including, without limitation, past and present lost wages, humiliation and embarrassment, emotional distress and anxiety, and other non-pecuniary damages allowed by law for the unlawful retaliation against Plaintiff,, all in excess of the jurisdictional limits of this Court;

(c) for equitable relief in the form of reinstatement, or, in the alternative, an award of damages for front pay;

(d) reasonable attorney's fees, reasonable expert witness fees, and other costs of the action;

(e) interest calculated at the prevailing rate; and

(f) any and all other relief to which he may be entitled.

Respectfully submitted,

ROARK & KORUS, PLLC

*/s/ Robert L. Roark*
Robert L. Roark, Esq.
Tyler Z. Korus, Esq.
401 Lewis Hargett Cr., Ste. 210
Lexington, Kentucky 40503
Telephone: 859-203-2430
Facsimile: 859-523-6351
Rob@roarkkorus.com
Tyler@roarkkorus.com
*Counsel for Plaintiff, Michael Clegg*