UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHAEL CLEGG,<br><br>Plaintiff,<br><br>V.<br><br>AMCOR RIGID PACKAGING USA, LLC,<br><br>Defendant. | ) | Civil Action No. 5: 21-232-DCR<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

The Sarbanes-Oxley Act of 2002 ("SOX") was congress's response to a series of major corporate and accounting scandals, typified by the collapse and fall of companies like Enron and WorldCom. SOX makes it illegal for publicly traded companies to retaliate against an employee who reports suspected fraud or who assists in a fraud investigation or enforcement proceeding. *See* 18 U.S.C. § 1514A. To effectuate the protection of these whistleblowers, SOX created a private right of action allowing employees who believe they have been retaliated against to file suit directly in federal court. *See* 18 U.S.C. § 1514A(b)(1)(B). Plaintiff Michael Clegg brings such an action against his former employer, Defendant Amcor Rigid Packaging USA, LLC ("Amcor"). [Record No. 1]

Clegg alleges that he was terminated in retaliation for his opposition to improper inventory practices. [*Id.*, ¶¶ 12–23] Amcor has responded with a motion to dismiss, arguing that Clegg has failed to plead facts sufficient to establish that he was engaged in a protected activity. [Record No. 10, p. 1] After carefully considering this matter, Amcor's motion will

be granted because no reasonable person would believe that the facts known to Clegg justified his belief that illegal conduct was occurring.

**I.**

Amcor is a subsidiary of Amcor plc, a publicly traded company with annual sales of $12.9 billion.[1] [Record No. 10-1, p. 7, 27] The defendant operates fifty-one facilities across eleven countries, and accounts for 22% of Amcor plc's consolidated sales. [*Id.*]

Amcor hired Clegg in July 2018. [Record No. 1, ¶ 5] He was transferred to Amcor's Nicholasville, Kentucky facility to work as a Supply Chain Manager in July of 2020. [*Id.*] As a Supply Chain Manager, Clegg was responsible for "accurately assess[ing] and report[ing] the facility's inventory reconciliation." [*Id.*, ¶ 6] This included adjusting or "writing-down" discrepancies found in the cycle counts of materials like plastic bottles, cardboard, and wooden shipping pallets. [*Id.*]

Clegg alleges that, during his employment in Nicholasville, he discovered "serious improprieties" in the facility's inventory practices. [*Id.*, ¶¶ 8–11] Setting aside the generalized allegations of "suspicious and incorrect . . . practices," Clegg provides only two concrete examples of improprieties. [*Id.*, ¶¶ 8–15] The first involves "a large quantity of . . . plastic bottles being stored in an improper location." [*Id.*, ¶ 12] Clegg asserts that this was done to

---

1 This information comes from Amcor plc's Form 10-K filing. Although this form is not attached to the Complaint, the Court takes judicial notice of it pursuant to Rule 201 of the Federal Rules of Evidence. Fed. R. Evid. 201. The facts contained in the 10-K are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned and, as such, are "not subject to reasonable dispute." *Id.* 201(b). Moreover, because this information is amenable to judicial notice, the Court may consider it without converting Amcor's motion to dismiss into a motion for summary judgment. *Ashland Inc. v. Oppenheimer & Co., Inc.*, 689 F. Supp. 2d 874, 881 (E.D. Ky. 2010); *see also, e.g.*, *In re Facebook, Inc. Secs. Litig.*, 477 F. Supp. 3d 980, 1010 (N.D. Cal. 2020) (taking judicial notice of Facebook's 10-K for motion to dismiss because it is a public filing made with the SEC).

avoid writing off the value of the bottles on the company's financial statements. [*Id.*] He admits, however, that when he raised this problem with management, they promised to "tak[e] efforts to resolve the issue[]." [*Id.*]

The second of Clegg's well-pleaded allegations details "an issue with the Nicholasville plant's cycle count of cardboard." [*Id.*, ¶ 14] Cycle counting is an ongoing method of auditing by which a company confirms that their physical inventory matches their computerized records. Clegg asserts that one of his subordinates found "[d]iscrepancies" in the cycle count, and that the plant manager initially refused to accept the count. [*Id.*, ¶ 14] But after additional counts to confirm the discrepancy, the plant manager "agreed to accept the cycle count" and to "properly document the loss with a six-figure write-off." [*Id.*, ¶ 15] According to Clegg, these improprieties caused Amcor to overstate its assets by a total of "several hundred thousand[] . . . dollars." [*Id.*, ¶¶ 8, 10]

Amcor placed Clegg on a Performance Improvement Plan several weeks after the second incident, citing his inability to get along with other employees and the fact that he was a "bully." [*Id.*, ¶ 16, 25] Amcor terminated Clegg's employment on or about November 16, 2020, citing his "failure to improve." [*Id.*, ¶ 22] Clegg then filed this action. [*See generally* Record No. 1.]

**II.**

Rule 12 of the Federal Rules of Civil Procedure allows a party to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

Court construes the complaint in the plaintiff's favor and accept all well-pleaded allegations as true. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005)). However, it need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**III.**

To bring a SOX retaliation claim, a plaintiff must allege facts to support that: (1) he engaged in protected activity; (2) his employer knew or suspected that he engaged in the protected activity; (3) he suffered an adverse personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action. *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 805 (6th Cir. 2015) (citing *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 344 (4th Cir. 2014)).

Here, the only question is whether Clegg was engaged in protected activity. [*See* Record No. 10, p. 8.] To establish that he was engaged in a protected activity, the plaintiff must show that he "reasonably believe[d] that the conduct complained of constitutes a violation of" one of the provisions enumerated in § 1514A.[2] *Rhinehimer*, 787 F.3d at 811 (internal

---

[2] These enumerated provisions include: (1) specified federal criminal fraud statutes, 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), and § 1348 (securities fraud); (2) any rule or regulation of the Securities and Exchange Commission; and (3) any provision of federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1).

Clegg's theory of protected activity appears to rely on the shareholder fraud prong, based on the allegations in his Complaint. [*See* Record No. 1, ¶¶ 7–9, 24, 41.] His Response does introduce a discussion of SOX § 404, but any reliance on this provision would be misguided. [Record No. 15, p. 12] Section 404 requires public companies' annual reports to include the company's assessment of its internal controls over *financial reporting*. *See* 15

quotation marks omitted) (quoting *Sylvester v. Parexecl Int'l LLC*, ARB No. 07-123, 2011 DOLSOX LEXIS 39, at *31 (Dep't of Labor May 25, 2011)). Reasonable belief includes both an objective and a subjective component, as the name suggests. *Id.* (citing *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2nd Cir. 2014)). The subjective component requires that the plaintiff "actually believe" the conduct complained of was a violation of § 1514A. *Id.* Amcor does not contest Clegg's subjective belief. Instead, it focuses on whether that belief was objectively reasonable. [*See* Record No. 10, p. 10.]

Objective reasonableness is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee. *Rhinehimer*, 787 F.3d at 811. The Court considers the totality of the circumstances present at the time of the complaint in conducting this evaluation. *Id.* (citing *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 361 (4th Cir. 2008) (Michael, J., dissenting)). The issue is fact-dependent and should be decided as a matter of law only when no reasonable person could have believed that the facts known to the employee justified their belief that illegal conduct was occurring. *Id.*

Thus, the relevant question is whether *any* reasonable supply chain manager would believe that the facts taken from Clegg's Complaint justify the belief that Amcor was committing shareholder fraud. And the answer to that question is no. The totality of the circumstances illustrates that Clegg's belief of shareholder fraud was objectively unreasonable.

---

U.S.C. § 7262. These types of controls are different in both kind and degree than those at issue in Clegg's Complaint (concerning inventory tracking). Accordingly, the Court proceeds under the assumption that Clegg is alleging Amcor's conduct constituted shareholder fraud.

First, the conduct that was the subject of Clegg's complaints was exceedingly minor. As several courts have noted, "a complainant's complaint [may] concern[] such a trivial matter . . . that he or she did not engage in protected activity under [§ 1514A]." *Nielsen*, 762 F.3d at 222 (internal quotation marks omitted) (quoting *Sylvester*, 2011 DOLSOX LEXIS 39, at *19). Clegg's Complaint contains only two well-pleaded allegations forming the basis of his purportedly protected activity. [*See* Record No. 1.] The first concerns the alleged improper storage of a "large quantity" plastic bottles, while the second concerns purported discrepancies in the cycle count of cardboard. [*Id.*, ¶¶ 12–15] Taking Clegg's assertions as true, the combined impact of both incidents was well under a million dollars. [*See id.*, ¶ 10 (noting that the combined total of the improprieties was "equal to several hundred thousand[] . . . dollars.").]

As discussed above, Defendant Amcor is a subsidiary of Amcor plc, and accounts for approximately 22% of Amcor plc's $12.9 billion in annual sales. [Record No. 10-1, pp. 7, 27] Thus, a one-million-dollar loss represents just 0.035% of Amcor's revenue. [*See id.*] Such a sum would constitute a "minor discrepancy to a company that annually generates billions of dollars" in revenue. *Beacom v. Oracle Am., Inc.*, 825 F.3d 376, 381 (8th Cir. 2016) (holding that plaintiff's belief of shareholder fraud based on a $10 million discrepancy was objectively unreasonable); *see also Westacki v. Merck & Co.*, 215 F. Supp. 3d 412, 429 (E.D. Pa. 2016) ("Considering [the company's] revenue stream, it cannot be said that such a small amount meets the materiality requirement for an objectively reasonable belief in shareholder fraud."). Because the sum is minor, it "bears only a tenuous relationship to shareholder interests." *Colesanti v. Dickinson*, No. 18-491WES, 2019 U.S. Dist. LEXIS 145578, at *21 (D.R.I. July 19, 2019). Thus, the factual allegations taken from Clegg's Complaint do not support an

objectively reasonable belief that Amcor was committing shareholder fraud. *See Gibney v. Evolution Mktg. Rsch., LLC*, 25 F. Supp. 3d 741, 748 (E.D. Pa. 2014) ("Nothing in the text of § 1514A . . . suggests that SOX was intended to encompass *every* situation in which any party takes an action that has some attenuated, negative effect on the revenue of a publicly-traded company, and by extension decreases the value of a shareholder's investment.") (emphasis in original).

Moreover, Clegg admits that when he complained of the incidents, management indicated that they would resolve the problems. [Record No. 1, ¶¶ 12, 15] In determining whether an employee's belief concerning fraud is objectively reasonable, a court may consider the employer's reaction to the disclosure. *Colesanti*, 2019 U.S. Dist. LEXIS 145578, at *21 (citing *Day v. Staples*, 555 F.3d 42, 58 (1st Cir. 2009)). Here, Amcor promised to "tak[e] efforts to resolve the issues reported" and to "properly document the loss with a six-figure write-off." [Record No. 1, ¶¶ 12, 15] Clegg had no reason not to take Amcor at its word. His continuing belief of illegality in the face of these assurances was objectively unreasonable.

Finally, the nature of Clegg's employment with Amcor underscores the objective unreasonableness of his belief. Clegg was employed as a Supply Chain Manager. [Record No. 1, ¶ 5] His duties were to "accurately assess *and report* the facility's inventory reconciliation." [*Id.*, ¶ 6 (emphasis added)] This included "adjusting or 'writing-down' discrepancies found in [the] cycle counts" of plastic bottles, cardboard, and shipping pallets. [*Id.*] The fact that such a position and its duties are necessary implies that issues like those from Clegg's Complaint arise as a matter of course. Rather than suggesting a plot to defraud shareholders, these matters illustrate that Amcor is a large business with many moving parts, where errors can occur. By reporting these issues, Clegg was acting in accordance with his

job description by reporting these issues.[3] No reasonable supply chain managers in Clegg's position would believe that these issues—the exact type of which they were *hired to address*—justify a belief that Amcor was committing shareholder fraud.[4]

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Amcor's motion to dismiss [Record No. 10] is **GRANTED**.

Dated: January 3, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

[3] This fact also casts doubt on the second element of Clegg's prima facie case, i.e., that Amcor "knew or suspected" Clegg was engaged in a protected activity. *See Rhinehimer*, 787 F.3d at 805. However, the parties did not brief this issue and the undersigned does not consider it as a basis for decision.

[4] This is especially true when, as discussed above, Amcor management promised to fix the issues that Clegg brought to its attention. [*See* Record No. 1, ¶¶ 12, 15.]